FILED

IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

2018 SEP -5  PM 3: 28

JOSEPH N. RUCKI

BENWOOD-MEMECHEN
HOUSING AUTHORITY,

        Plaintiff,

vs.

        Civil Action No. 18-C-*209*
        Judge _*CRAMER*_

GREAT AMERICAN
INSURANCE COMPANY,

        Defendant.

## COMPLAINT

      COMES NOW, Plaintiff Benwood-McMechen Housing Authority who, for its Complaint against the Defendant Great American Insurance Company, states and alleges as follows:

      1.    Plaintiff Benwood-McMechen Housing Authority is a non-profit, public entity located in Benwood, Marshall County, West Virginia which assists low to moderately low income citizens obtain safe, decent and affordable housing opportunities and services.

      2.    Defendant Great American Insurance Company, is an insurance company organized and existing under the laws of the State of Ohio with its principal place of business in Cincinnati, Ohio, which is authorized to do business and does business in the State of West Virginia.

      3.    Defendant Great American Insurance Company [hereinafter "GAIC"] issued a Directors and Officers Professional Liability Insurance policy, being policy number EPP9426315, with a policy period of March 10, 2017 to March 10, 2018 to Plaintiff Benwood-McMechen Housing Authority [hereinafter "BMHA"].  A copy of policy number EPP9426315 is attached hereto as Exhibit A.

4. On or about January 22, 2018, Plaintiff BMHA was served with a Complaint, entitled "Amended Complaint" filed in the Circuit Court of Marshall County, West Virginia by Celise R. Roxby against BMHA and others [hereinafter referred to as "Roxby Complaint"].

5. On or about January 24, 2018, Plaintiff BMHA caused a notice of the Roxby Complaint to be provided to Defendant GAIC, together with a demand for coverage, including the provision of a defense to and indemnification of the claims asserted therein against BMHA and its employee, Robert Allen Skvarka.

6. Upon receipt of the Roxby Complaint, Defendant GAIC failed to conduct any investigation into the allegations asserted against BMHA therein, including failing to even contact BMHA representatives to obtain a statement or statements regarding the allegations asserted in the Roxby Complaint.

7. On or about January 25, 2018, the day after receiving notice of the Roxby Complaint, Defendant GAIC sent a letter to Plaintiff BMHA denying the request for coverage and refusing to provide a defense to the Roxby Complaint. A copy of the January 25, 2018 denial letter is attached hereto as Exhibit B.

8. As a direct and proximate result of Defendant GAIC's refusal to acknowledge its coverage obligations and provide a defense to Plaintiff BMHA and its employee, Robert Allen Skvarka, Plaintiff BMHA was forced to retain the services of the law firm of Gold, Khourey & Turak, L.C. to protect its interests and those of its employee.

9. By letter dated February 19, 2018, Plaintiff BMHA, through its counsel, requested Defendant GAIC reconsider its denial of coverage relative to the Roxby Complaint.

10.      Having received no response from Defendant GAIC to its February 19, 2018 letter, Plaintiff BMHA reiterated its request that Defendant GAIC reconsider its denial coverage relative to the Roxby Complaint and provided additional factual information regarding the claims.

11.      By email dated April 25, 2018, Defendant GAIC advised counsel for Plaintiff BMHA that it had reconsidered its denial of coverage, would be providing a defense subject to a reservation of rights and would be sending a revised coverage letter.

12.      Having received no further communication from GAIC, counsel for Plaintiff BMHA sent a letter dated May 29, 2018 advising GAIC that: (1) a revised coverage letter had not been received; (2) that defense counsel retained by another insurer had not been contacted by GAIC to coordinate the defense of BMHA; (3) GAIC had not communicated with either BMHA or its counsel in any manner regarding the litigation since the April 25, 2018 communication; (4) GAIC has an obligation under the terms of the policy to provide a defense; (5) GAIC's failure to act and put its coverage position in writing was causing BMHA to continue to incur legal fees; and (6) a settlement demand in the amount of $65,000 had been made by Celise R. Roxby to resolve all claims asserted in Roxby Complaint as against all defendant, which settlement demand needed a response from GAIC on behalf of BMHA and its employee, Robert Allen Skvarka.

13.      Plaintiff BMHA's May 29, 2018 letter to GAIC also enclosed a statement of attorney fees incurred to date as a result of GAIC's failure to promptly acknowledge its coverage obligations and provide a defense to the Roxby Complaint and advised that additional fees may be incurred if GAIC adopts a coverage position hostile to the interests of BMHA.

14.      Defendant GAIC did not acknowledge or respond to Plaintiff BMHA's May 29, 2018 letter during the month of June 2018.

3

15.     Defendant GAIC did not communicate with Plaintiff BMHA or defense counsel retained by another insurer to represent the interests of Plaintiff BMHA relative to the Roxby Complaint during the month of June 2018.

16.     By certified letter dated June 26, 2018, Plaintiff BMHA advised Defendant GAIC: (1) that the revised coverage letter Defendant GAIC represented on April 25, 2018 would be forthcoming had still not been received; (2) that Plaintiff BMHA had not received an acknowledgment of, or response, to its May 29, 2018; (3) that Plaintiff BMHA was entitled to written confirmation of Defendant GAIC's coverage position; and (4) that Plaintiff BMHA was entitled to know what steps, if any, Defendant GAIC had taken to protect Plaintiff BMHA's interests relative to the Roxby Complaint. The letter further reiterated the requests for information made in Plaintiff BMHA's May 29, 2018 letter, including requesting that Defendant GAIC disclose its position relative to settlement of the Roxby Complaint.

17.     Defendant GAIC responded to Plaintiff BMHA's June 26, 2018 letter by email on July 2, 2018 stating:

> I'm in receipt of your letter. I've been waiting for Nationwide to send me a copy of their Policy. I've requested it from them three times, and I have not received it yet. As it could impact, I was hoping to review it before issuing our updated analysis. However, if I do not receive it soon, I'll be sending you our updated coverage/reservation of rights letter.
>
> If you have any questions, please let me know.
>
> Great American continues to reserves its rights on this matter.

18.     By letter dated July 6, 2018, Plaintiff BMHA acknowledged Defendant GAIC's July 2, 2018 email, advised it was non-responsive to Plaintiff BMHA's May 29, 2018 and June 26, 2018

4

letters and reiterated its request that Defendant GAIC confirm its coverage position in writing and disclose the steps it has taken to protect the interests of Plaintiff BMHA relative to the Roxby Complaint.

19.     Plaintiff BMHA's July 6, 2018 letter further requested Defendant GAIC disclose the authority upon which it relies to: (1) contact and request a copy of Plaintiff BMHA's policy issued by another insurer from the other insurer without Plaintiff BMHA's knowledge or consent; and (2) delay affirming or denying coverage or taking a coverage position because the other insurer had not provided Defendant GAIC with a copy of Plaintiff BMHA's policy.

20.     Plaintiff BMHA's July 6, 2018 letter further requested Defendant GAIC disclose the pertinent provisions of the Great American policy that Defendant GAIC relied upon in substantiation of its position that the acquisition and review of another insurer's policy is a prerequisite to Defendant GAIC's coverage decision.

21.     Plaintiff BMHA's July 6, 2018 letter further advised Defendant GAIC that it was continuing to incur legal fees as a result of Defendant GAIC's failure to affirm and disclose its coverage position and included an updated attorney fee statement in the amount of $6,050.00.

22.     Defendant GAIC responded to Plaintiff BMHA's July 6, 2018 letter by email on July 12, 2018 stating:

> Please see attached.
>
> The invoice you provided for your fees does not fall under our Policy's definition of Costs of Defense. As we've previously discussed, you are not considered a 'prevailing party' because we changed our coverage determination, after receiving additional documentation. I am not aware of any case law that would provide the payment of your fees.

5

Also, it is our understanding that the demand of $65,000 from the Plaintiff arises mainly out of the requested repairs to her unit. I'll discuss potential resolution directly with defense counsel as well.

Finally, I have previously requested on multiple occasions, that the GL carrier send me a copy of their Policy. Pursuant to Section IV.B. of the Great American Policy, if you are in possession of GL carrier's Policy, could you please forward a copy to me.

23.    Defendant GAIC's July 12, 2018 email  also attached a reservation of rights letter dated July 12, 2018. A copy of the July 12, 2018 reservation of rights letter is attached hereto as Exhibit C.

24.    By letter dated July 16, 2018, Plaintiff BMHA demanded that Defendant GAIC identify the documentation referenced in its July 12, 2018 email upon which it relied to change its coverage determination.

25.    Defendant GAIC responded to Plaintiff BMHA's July 16, 2018 letter by email dated July 20, 2018 stating:

As you know, we agreed to defend this matter under a reservation of rights. We have not waived any of the coverage issues previously addressed in our prior correspondence. We based this determination on the documents you sent. I previously corresponded with you regarding this, and we spoke about it. Great American continues to believe that serious coverage issues are applicable in this matter, including the exclusionary language previously cited.

## COUNT I
## DECLARATORY JUDGMENT

26.    Plaintiff reasserts and re-alleges the matters set forth in paragraphs 1-25 above as if set forth fully herein.

27.     West Virginia Code § 55-13-1 authorizes this Court to declare the parties rights and obligations under policy number EPP9426315.

6

28.     Policy number EPP9426315 contains the following insuring agreements:

A.      If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against any **Insured Persons** for a **Wrongful Act**, the **Insurer** shall pay on behalf of the **Insured Persons**, **Loss** and **Costs of Defense** resulting from such **Claim**, except for any **Loss** and **Costs of Defense** which the **Organization** or any **Subsidiary** actually pays as indemnification.

B.      If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against any **Insured Persons** for a **Wrongful Act**, the **Insurer** shall pay on behalf of the **Organization** or any **Subsidiary**, **Loss** and **Costs of Defense** resulting from such **Claim**, but only to the extent the **Organization** or any **Subsidiary** is required or permitted by law to indemnify the **insured Persons.**

C.      If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against the **Organization** or any **Subsidiary** for a **Wrongful Act**, the **Insurer** shall pay on behalf of the **Organization** or any **Subsidiary**, **Loss** and **Costs of Defense** resulting from such **Claim**.

Exhibit A, Section I.

29.     Policy number EPP9426315 defines **"Claim"**, in relevant part, as:

(1)     a written demand for monetary or non-monetary (including injunctive) relief made against any insured;

(2)     a civil proceeding, including any appeals therefore made against any **Insured** seeking monetary or non-monetary (including injunctive) relief commenced by service of a complaint or similar proceeding; . . .

Exhibit A, Section III, A.

30.     Policy Number EPP9426315 provides, in pertinent part, " **'Costs of Defense'** shall mean reasonable and necessary legal fees, costs and expenses incurred in the investigation and defense of any **Claim**, . . ." Exhibit A, III, C.

31.     Policy number EPP9426315 defines **"Insured"** as:

7

(1)    the **Organization**;

(2)    any **Subsidiary**;

(3)    in the event of **Financial Insolvency**, the resulting Debtor in

Possession (or foreign equivalent status), if any; and

(4)    all **Insured Persons**.

Exhibit A, Section III, G.

32.    Policy Number EPP9426315 defines **"Insured Persons"** as:

all persons who were, now are, or shall be directors, trustees, officers,
regents, governors, members of the Board of Managers, employees,
leased employees, temporary or seasonal employees, interns, student
teachers, substitute teachers, teaching assistants, volunteers or staff
members of the **Organization** or any **Subsidiary**, including any
executive board members and committee members whether salaried
or not.

Exhibit A, Section III, H.

33.    Policy Number EPP9426315 defines **"Loss"** as:

settlements, judgments, pre-judgment and post-judgment interest,
front and back pay, compensatory damages, punitive or exemplary
damages, the multiple portion of any multiplied damage award, and
subject to the provisions of Section V and VI, **Costs of Defense**
incurred by the **Insured**.

Exhibit A, Section III, I.

34.    Policy Number EPP9426315 provides" **'Organization'** shall mean the entity named

in Item 1 of the Declarations." Exhibit A, III, J.

35.    Policy number EPP9426315 defines **"Wrongful Act"**, in part, as:

(1)    any of the following by the **Organization**, and/or any
**Subsidiary**, and/or any **Insured Persons** acting in their capacity with
the **Organization** or **Subsidiary**:

8

> (a) actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty; . . .

Exhibit A, Section III, R.

36. Plaintiff BMHA is the **Organization** named in Item 1 of the Declarations. Exhibit A, Declarations.

37. . Robert Allen Skvarka is an employee of Plaintiff BMHA and is an **Insured Person** under the terms and conditions of Policy Number EPP9426315. *See*, Exhibit A, Section III, H.

38. The Roxby Complaint constitutes a **Claim** under the terms and conditions of Policy Number EPP9426315. *See*, Exhibit A, Section III, A. A copy of the Roxby Complaint is attached hereto as Exhibit D.

39. The allegations asserted against Plaintiff BMHA and Robert Allen Skvarka in the Roxby Complaint constitute **Wrongful Acts** under the terms and conditions of Policy Number EPP9426315 in as much as the Roxby Complaint alleges errors including, misstatements, misleading statements, acts or omissions and neglect. *See*, Exhibit A, Section III, R; Exhibit D.

40. Plaintiff BMHA is entitled, under the terms and conditions of Policy Number EPP9426315, to an unqualified defense of the claims asserted against it and its employee in the Roxby Complaint, including reimbursement of all attorney's fees and costs incurred in defending the claims.

41. Plaintiff BMHA is entitled, under the terms and conditions of Policy Number EPP9426315, to an unqualified agreement to indemnify Plaintiff BMHA for any settlement or judgment resolving the Roxby Complaint, including pre-judgment and post-judgment interest.

## Count II
## Negligence

42. Plaintiff reasserts and re-alleges the matters set forth in paragraphs 1-41 above as if set forth fully herein

43. Defendant GAIC assigned Plaintiff BMHA to its employee, Daniel P. Evans, to handle Plaintiff BMHA's claim for coverage relative to the allegations set forth in the Roxby Complaint.

44. Defendant GAIC negligently failed to train its employee, Daniel P. Evans, on insurance industry standards for good faith claims handling practices, including, but not limited to, how to conduct a reasonable, thorough and fair coverage analysis.

45. Defendant GAIC negligently failed to train its employee, Daniel P. Evans, on insurance industry standards for good faith claims handling practices, including, but not limited to, the duties and obligations an insurer owes an insured when conducting a coverage investigation and analysis.

46. Defendant GAIC acted negligently, inappropriately and without regard to the rights of its insured, Plaintiff BMHA, when it assigned Plaintiff BMHA's claim for coverage to its employee, Daniel P. Evans, an adjuster not reasonably trained nor qualified to conduct a fair and appropriate coverage investigation and analysis.

47. Defendant GAIC, by and through the acts of its agent and employee, Daniel P. Evans, negligently failed to conduct an appropriate investigation into the facts and circumstances of the Roxby Complaint in relation to the terms and conditions of Policy Number EPP9426315, prior to issuing a blanket denial of coverage.

48.     Defendant GAIC, by and through the acts of its agent and employee, Daniel P. Evans, acted negligently, inappropriately, carelessly, recklessly and with a blatant disregard for the rights and interests of its insured, Plaintiff BMHA, when it denied coverage for the Roxby Complaint one day after being notified of the claim.

49.     Defendant GAIC, by and through the acts of its agent and employee, Daniel P. Evans, acted negligently, inappropriately, recklessly and with a blatant disregard for the rights and interests of its insured, Plaintiff BMHA, when it denied coverage for the Roxby Complaint without conducting any investigation.

50.     As a direct and proximate result of Defendant GAIC's negligence, Plaintiff BMHA was forced to retain an attorney and institute legal proceedings to obtain the coverage to which it is entitled under Policy Number EPP9426315.

51.     As a direct and proximate result of Defendant GAIC's careless, reckless and blatant disregard of the rights and interests of its insured, Plaintiff BMHA was forced to retain an attorney and institute legal proceedings to obtain the coverage to which it is entitled under Policy Number EPP9426315.

## Count III
## Breach of the Implied Duty of Good Faith and Fair Dealing

52.     Plaintiff reasserts and re-alleges the matters set forth in paragraphs 1-51 above as if set forth fully herein.

53.     Inherent in Policy Number EPP9426315 is an implied covenant of good faith and fair dealing.

11

54. Defendant GAIC breached the implied covenant of good faith and fail dealing when it denied, by letter dated January 25, 2018, Plaintiff BMHA's request for a defense and indemnification relative to the Roxby Complaint one day after the request was presented without any investigation into the facts and circumstances of the Complaint. *See*, Exhibit B.

55. As a direct and proximate result of Defendant GAIC's breach of the implied covenant of good faith and fair dealing, Plaintiff BMHA was forced to incur attorney's fees and costs to defend the claims asserted against in the Roxby Complaint.

56. As a direct and proximate result of Defendant GAIC's breach of the implied covenant of good faith and fair dealing, Plaintiff BMHA was forced to retain an attorney and incur attorney's fees and costs to obtain Defendant GAIC's agreement to provide a defense to Plaintiff BMHA and its employee, Robert Allen Skvarka, relative to the Roxby Complaint.

57. As a direct and proximate result of Defendant GAIC's breach of the implied covenant of good faith and fair dealing, Plaintiff BMHA was forced to retain an attorney and is continuing to incur attorney's fees and costs to obtain Defendant GAIC's agreement to indemnify Plaintiff BMHA and its employee, Robert Allen Skvarka, for any settlement and/or judgment relative to the Roxby Complaint.

*WHEREFORE*, for the reasons set forth above, Plaintiff Benwood-McMechen Housing Authority requests that this Court declare the parties rights and duties under Policy Number EPP9426315, including a declaration that Defendant Great American Insurance Company is obligated to provide an unqualified defense and indemnification to Plaintiff BMHA and its employee, Robert Allen Skvarka, relative to the Roxby Complaint and pray that judgment be entered against Defendant Great American Insurance Company for contractual and compensatory damages

12

in an amount deemed fair, just and equitable by the Court and/or jury, together with the attorney's

fees and costs it incurred in obtaining the coverage to which it was entitled under Policy Number

EPP9426315 and pursuing this action.

**PLAINTIFF DEMANDS A TRIAL BY JURY RELATIVE TO COUNT II OF THE
COMPLAINT.**

*Michelle Marinacci*
Jonathan E. Turak (#3816)
Michelle Marinacci (#7482)
GOLD, KHOUREY & TURAK, L.C.
510 Tomlinson Avenue
Moundsville, WV  26041
P: (304) 845-9750
F: (304) 845-1286
E: jet@gkt.com
E: mlm@gkt.com
***Attorneys for Plaintiff***



**GREATAMERICAN**
INSURANCE GROUP

301 E. Fourth Street, Cincinnati, OH 45202

*ExecPro* sm
# DECLARATIONS
for
Nonprofit Solutions
Insurance Policy

Insurance is afforded by the company indicated below: (Each a capital stock corporation)

☒ Great American Insurance Company

Policy Number: EPP9426315          Policy Form Number:          D16100

Item 1. Name of Organization:          BENWOOD-MCMECHEN HOUSING AUTHORITY

Mailing Address:          2200 MARSHALL STREET

City, State, Zip Code:          BENWOOD, WV 26031

Attn:          EXECUTIVE DIRECTOR

Item 2. Policy Period: From _____ 03/10/2015 _____ To _____ 03/10/2016 _____
                                     *(Month, Day, Year)*                *(Month, Day, Year)*
(Both dates at 12:01 a.m. Standard Time at the address of the **Organization** as stated in Item 1)

Item 3. Aggregate Limit(s) of Liability for each **Policy Year**:

| | | |
|---|---|---|
| (a) | $ 500,000 | for all **Claims** other than Claims for **Employment Practices Wrongful Acts**. |
| (b) | $ 10,000 | Donor Data Loss Crisis Fund Sublimit of Liability. This limit is part of and not in addition to the Limit of Liability provided for in 3(a). |
| (c) | $ 500,000 | for all **Claims** for **Employment Practices Wrongful Acts**. This limit is: ☒ part of and not in addition to the Limit of Liability provided for in 3(a). ☐ separate from and in addition to the Limit of Liability provided for in 3(a). |
| (d) | $ 150,000 | FLSA Defense Sublimit of Liability. This limit is part of and not in addition to the Limit of Liability provided for in 3(c). |

Item 4. Retentions:
    Insuring Agreement A:                  $ 0                Each Claim
    Insuring Agreements B and/or C:        $ 2,500            Each Claim

Item 5. Premium:
            $ 3,470
            $ 19                WV Fire and Casualty Surcharge

Item 6. Endorsements Attached:
    D16319          D16504          DTCV_09P          DTDP_09P

Item 7. Notices: All notices required to be given to the **Insurer** under this Policy shall be addressed to:
                        *Great American Insurance Companies*
                        *Executive Liability Division*
                        *P.O. Box 66943*
                        *Chicago, Illinois 60666*

Item 8. Prior & Pending Litigation Date:          03/10/1993

These Declarations along with the completed and signed Proposal Form and Nonprofit Solutions Insurance Policy, shall constitute the contract between the **Insureds** and the **Insurer**.

## THIS IS A CLAIMS MADE POLICY. READ IT CAREFULLY.



**PLAINTIFF'S EXHIBIT**
*A*



*ExecPro*<sup>sm</sup>
Nonprofit Solution

**WEST VIRGINIA**
**AMENDATORY ENDORSEMENT**

In compliance with the insurance regulations of the State of West Virginia, the Policy is amended as follows:

Section II.A. of the Policy is deleted and replaced with the following:

If this Policy is not renewed or is cancelled by the **Insurer**, for any reason other than non-payment of premium, then without any additional premium being required, the **Organization** shall receive an automatic ninety (90) day extension of the coverage granted by this Policy for **Claims** first made against an **Insured**, but only with respect to **Wrongful Acts** committed prior to the end of the **Policy Period**. This additional reporting period shall be referred to as the **Automatic Discovery Period**. In addition, if prior to the end of the **Automatic Discovery Period**, the **Organization** pays the **Insurer** an additional amount equal to forty (40%), seventy-five (75%), or one hundred (100%) percent of the annual premium of this Policy, the **Organization** shall receive an extension of the coverage granted by this Policy for an additional twelve (12), twenty-four (24), or thirty-six (36) months respectively from the end of the **Automatic Discovery Period** for **Claims** first made against an **Insured**, but only with respect to **Wrongful Acts** committed prior to the end of the **Policy Period**. This additional reporting period shall be referred to as the **Discovery Period**. The **Organization** has no right to purchase this **Discovery Period** at any later date or to elect more than one **Discovery Period**.

If the Policy is canceled or non-renewed by the **Insurer** for non-payment of premium, the **Automatic Discovery Period** and any **Discovery Period** shall apply if the **Organization** pays, within sixty (60) days after the effective date of cancellation or non-renewal, any unpaid premium for the applicable **Policy Period** together with premium for the **Discovery Period** elected by the **Organization**. If the Policy is canceled or non-renewed effective as of the inception date and, therefore, no **Policy Period** applies, the **Organization** shall not be entitled to the **Automatic Discovery Period** or the right to purchase any **Discovery Period**.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: BENWOOD-MCMECHEN HOUSING AUTHORITY

Policy Period: 3/10/2015 to 3/10/2016                    Policy Number: EPP9426315

Countersigned by: _____        Endorsement Effective Date:  3/10/2015
                       *Authorized Representative*



**GREAT AMERICAN®**
**INSURANCE GROUP**

*ExecPro*℠
Nonprofit Solution

### LIMITED PARTNERSHIP EXCLUSION

It is understood and agreed that this Policy does not apply to any **Claim** made against any **Insured** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

the offering of units, investment in, management, operation and/or control of any limited partnership.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured:  BENWOOD-MCMECHEN HOUSING AUTHORITY

Policy Period:  3/10/2015 to 3/10/2016

Policy Number:  EPP9426315

Countersigned by: _____
                        *Authorized Representative*

Endorsement Effective Date:  3/10/2015

D 16504        (01/09)

Endorsement:  2

Page 1 of 1



*ExecPro*℠

GREATAMERICAN.
INSURANCE GROUP

# COVERAGE FOR ACTS OF TERRORISM

It is understood and agreed that the General Conditions of the Policy are amended by the addition of the following:

**Act of Terrorism** Coverage

Subject to all other terms and conditions of this Policy, coverage is available for **Loss** caused by an **Act of Terrorism** as defined below.

**"Act of Terrorism"** means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States —

    (i)   to be an act of terrorism;

    (ii)  to be a violent act or an act that is dangerous to —

        (a)  human life;

        (b)  property; or

        (c)  infrastructure;

    (iii) to have resulted in damage within the United States, or outside of the United States in the case of -

        (a)  an air carrier or vessel described in Section (5)(B) of the Terrorism Risk Insurance Act; or

        (b)  the premises of a United States mission; and

    (iv) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more **Acts of Terrorism** under the Terrorism Risk Insurance Act, as amended in 2007, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

No act shall be certified by the Secretary as an **Act of Terrorism** if (i) the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers compensation; or (ii) property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  BENWOOD-MCMECHEN HOUSING AUTHORITY

Policy Period:  3/10/2015 to 3/10/2016                     Policy Number:  EPP9426315

Countersigned by: _____        Endorsement Effective Date:  3/10/2015
             *Authorized Representative*



*ExecPro*℠

# AMENDMENT TO DECLARATIONS PAGE

It is understood and agreed that the Declarations is amended by the addition of the following:

**Act of Terrorism** Premium:    $  0.00

It is further understood and agreed the Policyholder Disclosure of Terrorism Coverage is attached to and is to be considered as incorporated in and constituting a part of this Policy.

Other than as stated above, nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the Policy to which this endorsement is attached.

Insured:  BENWOOD-MCMECHEN HOUSING AUTHORITY

Policy Period:  3/10/2015 to 3/10/2016

Policy Number:  EPP9426315

Countersigned by: _____
                                  *Authorized Representative*

Endorsement Effective Date:  3/10/2015



**GREATAMERICAN.**

INSURANCE COMPANIES

580 Walnut Street, Cincinnati, Ohio 45202

## POLICYHOLDER DISCLOSURE
## OF TERRORISM COVERAGE

The Terrorism Risk Insurance Act establishes a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an Act of Terrorism. The Act provides that, to be certified, an Act of Terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals as part of an effort to coerce the government or population of the United States.

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the federal program. The federal share equals 85% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

The Terrorism Risk Insurance Act, as amended in 2007, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses in any one calendar year exceeds $100 billion. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

In accordance with the Terrorism Risk Insurance Act, we are required to offer you coverage for losses resulting from an act of terrorism **that is certified under the federal program** as an Act of Terrorism. All other provisions of this policy will still apply to such an act. That is, a loss will not be excluded or covered just because it was caused by an Act of Terrorism.

The portion of the annual premium that is attributable to coverage for Acts of Terrorism that are certified under the Terrorism Risk Insurance Act is $0.00.

All other terms and conditions of the policy remain unchanged.

*If you would like to reject the coverage for "certified" Acts of Terrorism, please provide Great American written confirmation of such, and an exclusion will be attached to your policy.*

NTDN_08P  (01-08)

**EXECPRO® POLICY**

Employment Practices Risk Management Program

### Your Great American ExecPro® Policy gives you access to the following Jackson Lewis Risk Management Program

#### Jackson Lewis "Hotline" Service

National law firm Jackson Lewis is available for complimentary, confidential telephone consultation on basic workplace employment topics via the toll-free number. Through this "hotline", you can obtain guidance with respect to best practices for:

- Preserving employment-at-will status
- Managing medical leaves of absence
- Developing an open-door problem resolution procedure
- Reporting and investigating allegation of harassment or discrimination
- Eligibility standards for overtime pay under the Fair Labor Standards Act and state laws
- Developing a program to post opportunities for transfers and promotions to avoid class action claims
- Other basic human resources issues

#### Reducing Workplace Claims Guide

Via the "hotline" number, you can request a copy of Jackson Lewis' *Reducing the Risk of Employment Practices Liability Claims Guide*. This guide contains general information about diverse workplace law issues such as:

- Legal basis for employment claims
- Considerations in setting company policies and procedures
- Hiring process and pre-employment testing
- Complying with the Family and Medical Leave Act
- Conducting effective discharge and discipline
- Addressing reports of harassment in the workplace
- Maintaining personal records
- Establishing a code of conduct to help prevent employee misconduct

#### Preventive Strategies Newsletter

Via the "hotline" number, you can subscribe to Jackson Lewis' complimentary national and regional e-bulletins, which provide regular analysis and commentary about legal, legislative and political developments that affect the law of the workplace.

#### Jackson Lewis Training Session

Educational seminars and management training about compliance with federal equal employment laws and other risk management services are offered by Jackson Lewis to policyholders at a special rate. For further details, please call the "hotline" number.

#### Special Rates

Jackson Lewis will offer special billing rates to ExecPro® policyholders to assist in developing preventive practices, preparing employee handbooks and training supervisors.

To access the Jackson Lewis "hotline" or if you have further questions about the program, please call this toll-free number.

## 1 (888) 544 8320

**Executive Liability Division**
1515 Woodfield Road, Suite 500
Schaumburg, IL 60173
847 330 6750
847 330 3750 Claims Fax
eldclaims@gaic.com
www.GreatAmericanELD.com

**Jackson Lewis LLP**
58 South Service Road, Suite 410
Melville, NY 11747
631 247 0404 ext. 4722
631 247 0425 or 631 247 0417 fax
siegelp@jacksonlewis.com
www.JacksonLewis.com

Great American Insurance Group, 301 E Fourth Street, Cincinnati, OH 45202. Insurance is underwritten by Great American Insurance Company, a licensed insurer in 50 states and DC. Great American Insurance Company is the owner of the following registered service marks: the Great American Insurance Group eagle logo, and the word marks ExecPro®, Great American®, and Great American Insurance Group™. ©2011 Great American Insurance Company. All rights reserved. 1340-2-ELD (10/11)



GREAT**AMERICAN**
INSURANCE GROUP
Executive Liability Division



**GREAT**AMERICAN.

INSURANCE GROUP

*ExecPro*®

**Nonprofit Solution**

*ExecPro*®

# Nonprofit Solution

Great American Insurance Group – Executive Liability Division
Headquarters: 301 E. Fourth Street, Cincinnati, Ohio 45202

## Table of Contents

| | | | |
|---|---|---|---|
| I. | | Insuring Agreements | Page 1 |
| II. | | Discovery Period | Page 1 |
| III. | | Definitions | Page 2 |
| IV. | | Exclusions | Page 5 |
| V. | | Limit of Liability and Retention | Page 7 |
| VI. | | Costs of Defense and Settlements | Page 8 |
| VII. | | Notice of Claim | Page 8 |
| VIII. | | Coverage Extensions | Page 9 |
| | (A) | Spousal/Domestic Partner Provision | Page 9 |
| | (B) | Worldwide Provision | Page 9 |
| | (C) | Estates and Legal Representatives | Page 9 |
| | (D) | Donor Data Loss Crisis Fund | Page 9 |
| IX. | | General Conditions | Page 9 |
| | (A) | Cancellation or Non-Renewal | Page 9 |
| | (B) | Proposal Form | Page 10 |
| | (C) | Outside Entity Provision | Page 10 |
| | (D) | Order of Payments | Page 10 |
| | (E) | Merger or Acquisition | Page 10 |
| | (F) | Conversion to Run-Off Coverage | Page 11 |
| | (G) | Action Against the Insurer | Page 11 |
| | (H) | Subrogation | Page 11 |
| | (I) | Conformity to Law | Page 11 |
| | (J) | Assignment | Page 11 |
| | (K) | Representative of the Insurer | Page 12 |
| | (L) | Organization Represents Insured | Page 12 |
| | (M) | Entire Agreement | Page 12 |

## GREAT AMERICAN INSURANCE GROUP®

Headquarters: 301 E. Fourth Street, Cincinnati, Ohio 45202

## THIS IS A CLAIMS MADE AND REPORTED POLICY.  READ IT CAREFULLY.

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the company shown in the Declarations (a stock insurance company, hereinafter called the **Insurer**), including the statements made in the Proposal Form and subject to all terms, conditions and limitations of this Policy, the **Insured** and **Insurer** agree:

### Section I. Insuring Agreements

**A.** If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against any **Insured Persons** for a **Wrongful Act**, the **Insurer** shall pay on behalf of the **Insured Persons**, **Loss** and **Costs of Defense** resulting from such **Claim**, except for any **Loss** and **Costs of Defense** which the **Organization** or any **Subsidiary** actually pays as indemnification.

**B.** If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against any **Insured Persons** for a **Wrongful Act**, the **Insurer** shall pay on behalf of the **Organization** or any **Subsidiary**, **Loss** and **Costs of Defense** resulting from such **Claim**, but only to the extent the **Organization** or any **Subsidiary** is required or permitted by law to indemnify the **Insured Persons**.

**C.** If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against the **Organization** or any **Subsidiary** for a **Wrongful Act**, the **Insurer** shall pay on behalf of the **Organization** or any **Subsidiary**, **Loss** and **Costs of Defense** resulting from such **Claim**.

The **Insurer** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of such **Claim** are groundless, false or fraudulent.

### Section II. Discovery Period

**A.** If this Policy is not renewed or is cancelled by the **Insurer**, for any reason other than non-payment of premium, then without any additional premium being required, the **Organization** shall receive an automatic ninety (90) day extension of the coverage granted by this Policy for **Claims** first made against an **Insured**, but only with respect to **Wrongful Acts** committed prior to the end of the **Policy Period**.  This additional reporting period shall be referred to as the **Automatic Discovery Period**.  In addition, if prior to the end of the **Automatic Discovery Period**, the **Organization** pays the **Insurer** an additional amount equal to forty (40%), seventy-five (75%), or one hundred (100%) percent of the annual premium of this Policy, the **Organization** shall receive an extension of the coverage granted by this Policy for an additional twelve (12), twenty-four (24), or thirty-six (36) months respectively from the end of the **Automatic Discovery Period** for **Claims** first made against an **Insured**, but only with respect to **Wrongful Acts** committed prior to the end of the **Policy Period**.  This additional reporting period shall be referred to as the **Discovery Period**.  The **Organization** has no right to purchase this **Discovery Period** at any later date or to elect more than one **Discovery Period**.

**B.** If this Policy is not renewed or is cancelled by the **Organization**, and if no later than sixty (60) days after the end of the **Policy Period** the **Organization** pays the **Insurer** an additional amount equal to forty (40%), seventy-five (75%), or one hundred (100%) percent of the annual premium of this Policy, the **Organization** shall receive a **Discovery Period** for an additional twelve (12), twenty-four (24), or thirty-six (36) months respectively from the end of the **Policy Period**.  The **Organization** has no right to purchase this **Discovery Period** at any later date or to elect more than one **Discovery Period**.

**C.** The fact that this Policy may be extended by virtue of the **Automatic Discovery Period** or **Discovery Period** shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations. For purposes of the Limit of Liability, the **Automatic Discovery Period** and the **Discovery Period** is considered to be part of and not in addition to the last **Policy Year**.

## Section III. Definitions

**A.** **"Claim"** shall mean:

    (1) a written demand for monetary or non-monetary (including injunctive) relief made against any **Insured**;

    (2) a civil proceeding, including any appeals therefrom made against any **Insured** seeking monetary or non-monetary (including injunctive) relief commenced by service of a complaint or similar pleading;

    (3) a criminal proceeding, including any appeals therefrom made against any **Insured** commenced by the return of an indictment or the filing of notice of charge or similar document,

    (4) a formal administrative proceeding, including any proceeding before the Equal Employment Opportunity Commission (EEOC) or any similar governmental body, made against any **Insured** commenced by the receipt of charges, formal investigative order, service of summons or similar document;

    (5) any arbitration, mediation or similar alternative dispute resolution proceeding if any **Insured** is obligated to participate in such proceeding; or

    (6) a written request to enter into an agreement to toll any applicable statute of limitation prior to the commencement of any judicial, administrative, regulatory or arbitration proceeding.

In no event shall the term **Claim** include any labor or grievance proceeding which is subject to a collective bargaining agreement.

**B.** **"Claimant"** shall mean:

    (1) any past, present, and future **Insured Persons** or applicants for employment with the **Organization** or any **Subsidiary**;

    (2) a government entity or agency, including but not limited to the Equal Employment Opportunity Commission (EEOC) or any similar governmental body, when acting on behalf of or for the benefit of any individual in (1) above; or

    (3) all persons who were, now are, or shall be independent contractors, but only to the extent such individuals perform work or services for or on behalf of the **Organization** or any **Subsidiary** and only to the extent such individuals are indemnified by the **Organization** or any **Subsidiary**.

**C.** **"Costs of Defense"** shall mean reasonable and necessary legal fees, costs and expenses incurred in the investigation or defense of any **Claim**, including the costs of any appeal or appeal bond, attachment bond or similar bond (but without any obligation on the part of the **Insurer** to apply for or furnish such bonds); provided, however, **Costs of Defense** shall not include: (1) salaries, wages, overhead or benefit expenses associated with any **Insured Persons**, and (2) any amounts incurred in defense of any **Claim** which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty.

D.  **"Employed Lawyer Legal Services"** shall mean legal services provided by any **Insured Person** as an attorney, but only if such services are performed for the **Organization** or any **Subsidiary** and in the **Insured Person's** capacity with the **Organization** or any **Subsidiary**. **Employed Lawyer Legal Services** shall not include legal services rendered by any **Insured Person** for any third party.

E.  **"Employment Practices Wrongful Act"** shall mean any of the following acts related to employment, but only if alleged by or on behalf of a **Claimant**:

    (1)   wrongful dismissal, discharge or termination of employment, whether actual or constructive;
    (2)   misrepresentation;
    (3)   violation of employment laws;
    (4)   sexual or workplace harassment;
    (5)   discrimination;
    (6)   wrongful failure to employ or promote;
    (7)   wrongful discipline;
    (8)   wrongful deprivation of career opportunity including a wrongful failure to hire or promote;
    (9)   failure to grant tenure;
    (10)  negligent employee evaluation;
    (11)  retaliation;
    (12)  failure to provide adequate workplace or employment policies or procedures;
    (13)  defamation (including libel and slander);
    (14)  invasion of privacy;
    (15)  wrongful demotion;
    (16)  negligent reassignment;
    (17)  violation of any federal, state or local civil rights laws;
    (18)  negligent hiring;
    (19)  negligent supervision;
    (20)  negligent training;
    (21)  negligent retention; or
    (22)  acts described in (1) through (21) above arising from the use of the **Organization's** or **Subsidiary's** Internet, e-mail, telecommunication or similar systems, including the failure to provide and enforce adequate policies and procedures relating to such use of the **Organization's** or **Subsidiary's** Internet, e-mail, telecommunication or similar systems.

F.  **"Financial Insolvency"** shall mean the **Organization** becoming a Debtor in Possession, or the appointment of a receiver, conservator, liquidator, trustee, rehabilitator or similar official to control, supervise, manage or liquidate the **Organization**.

G.  **"Insured"** shall mean:

    (1)   the **Organization**;
    (2)   any **Subsidiary**;
    (3)   in the event of **Financial Insolvency**, the resulting Debtor in Possession (or foreign equivalent status), if any; and
    (4)   all **Insured Persons**.

H.  **"Insured Persons"** shall mean all persons who were, now are, or shall be directors, trustees, officers, regents, governors, members of the Board of Managers, employees, leased employees, temporary or seasonal employees, interns, student teachers, substitute teachers, teaching assistants, volunteers or staff members of the **Organization** or any **Subsidiary**, including any executive board members and committee members whether salaried or not.

I.     **"Loss"** shall mean settlements, judgments, pre-judgment and post-judgment interest, front and back pay, compensatory damages, punitive or exemplary damages, the multiple portion of any multiplied damage award, and subject to the provisions of Section V and VI, **Costs of Defense** incurred by the **Insured**. **Loss** shall not include:

    (1)   criminal or civil fines or penalties imposed by law, or taxes (except for the 10% "excess benefit" tax assessed by the Internal Revenue Service against any **Insured Person** pursuant to 26 USC Section 4958 (a)(2)`);

    (2)   the value of tuition or scholarships, employment related benefits, stock options, perquisites, deferred compensation or any other type of compensation earned in the course of employment or the equivalent value thereof; and

    (3)   any amounts which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for compensatory, punitive, or exemplary damages or the multiple portion of any multiplied damage award.

J.     **"Organization"** shall mean the entity named in Item 1 of the Declarations.

K.     **"Outside Entity"** shall mean any not-for-profit corporation, community chest, fund or foundation that is not included in the definition of **Organization** or **Subsidiary** and that is exempt from federal income tax as an organization described in Section 501(c)(3) of the Internal Revenue Code of 1986, as amended, and any other entity organized for a religious or charitable purpose under any non-profit organization act or statute.

L.     **"Personal Injury Wrongful Act"** shall mean any actual or alleged invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, libel or slander.

M.     **"Policy Year"** shall mean the period of one year following the effective date and hour of this Policy or the period of one year following any anniversary date thereof falling within the **Policy Period**; or if the time between the effective date or any anniversary date and the termination of this Policy is less than one year, such lesser period.  Any **Discovery Period** or **Automatic Discovery Period** shall be considered part of and not in addition to the last **Policy Year**.

N.     **"Policy Period"** shall mean the period from the inception of this Policy to the expiration date stated in Item 2 of the Declarations or its earlier termination, if applicable.

O.     **"Related Wrongful Acts"** shall mean **Wrongful Acts** which are causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

P.     **"Subsidiary"** shall mean:

    (1)   any entity which qualifies as a not-for-profit organization under the Internal Revenue Code, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 (and amendments thereto), and for which the **Organization** has or controls the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of such entity as of the inception date of this Policy;

    (2)   any similar entity which was created or acquired by the **Organization** after the inception date of this Policy, if the entity's total assets do not exceed thirty-five percent (35%) of the total consolidated assets of the **Organization** as of the inception date of this Policy; or

(3)   any other entity added as a **Subsidiary** by written endorsement to this Policy.

Coverage shall apply to a **Subsidiary** only for **Wrongful Acts** allegedly committed during the time such entity qualified as a **Subsidiary.**

Q.   **"Third Party Wrongful Act"** shall mean:

(1)   actual or alleged discrimination against a third party based upon such third party's race, color, religion, creed, age, sex, national origin, disability, pregnancy, HIV status, marital status, sexual orientation or preference, military status or other status protected pursuant to any applicable federal, state, or local statutory law; or

(2)   actual or alleged sexual harassment, including unwelcome sexual advances against, or requests for sexual favors of, a third party; or

(3)   actual or alleged civil rights violations against a third party related to (1) or (2) above.

R.   **"Wrongful Act"** shall mean:

(1)   any of the following by the **Organization,** and/or any **Subsidiary**, and/or any **Insured Persons** acting in their capacity with the **Organization** or a **Subsidiary**:

(a)   actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty;

(b)   actual or alleged error or omission in the rendering of or the failure to render **Employed Lawyer Legal Services;**

(c)   **Employment Practices Wrongful Act;**

(d)   **Personal Injury Wrongful Act;** or

(e)   **Third Party Wrongful Act;**

(2)   any matter claimed against any **Insured Person** solely by reason of their status with the **Organization** or any **Subsidiary**; or

(3)   any matter claimed against any **Insured Person** arising out of their service as directors, trustees, officers, regents, governors, or member of the Board of Managers of an **Outside Entity**, but only if such service is at the request of the **Organization** or any **Subsidiary**.

## Section IV. Exclusions

This Policy does not apply to any **Claim** made against any **Insured**:

A.   brought about or contributed to by: (1) any **Insured** gaining any profit, advantage or remuneration to which they were not legally entitled; or (2) the deliberate fraudulent or criminal acts of any **Insured**; however, this exclusion shall not apply unless it is finally adjudicated such conduct in fact occurred, nor shall it apply to coverage provided under Insuring Agreement I.B.;

B.   to the extent it is insured in whole or in part by any other valid and collectible policy or policies, (except with respect to coverage beyond the amount or amounts of coverage under such other policy or policies), whether such other policy or policies are stated to be primary, contributory, excess, contingent, or otherwise.  It is further understood and agreed that coverage for all **Claims** for **Personal Injury Wrongful Acts** shall be specifically excess of any similar coverage provided by the **Organization's** General Liability Policy.

C.   based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

    (1)   any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice or **Claim** given under any other policy of which this Policy is a renewal or replacement; or

    (2)   any civil, criminal, administrative or investigative proceeding involving any **Insured** pending as of or prior to the date stated in Item 8 of the Declarations, or any fact, circumstance or situation underlying or alleged in such proceeding;

D.   based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving: (1) bodily injury, sickness, disease or death of any person, assault or battery; (2) damage to or destruction of any tangible property or the loss of use of any tangible property; or (3) humiliation, mental anguish, or emotional distress; provided, however, that part (3) of this exclusion shall not apply to any **Claim** for an **Employment Practices Wrongful Act, Personal Injury Wrongful Act**, or **Third Party Wrongful Act**;

E.   for any actual or alleged violation by any **Insured** of the Employee Retirement Income Security Act of 1974, the National Labor Relations Act, the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act or any rules or regulations promulgated under these acts or any similar provisions of any federal, state, local or foreign law, except a **Claim** alleging retaliation for the exercise of any rights under such laws;

F.   for any **Wrongful Act** of any **Insured Persons** in their respective capacity as a director, officer, trustee, regent, governor, member of the Board of Managers, or equivalent position of an entity other than the **Organization**, any **Subsidiary**, or **Outside Entity**;

G.   based upon, arising out of, relating to, directly or indirectly resulting from or inconsequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission, contamination or irritant of any kind, including but not limited to smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, asbestos, chemicals or waste of any kind, provided, however, this exclusion shall not apply to coverage provided under Insuring Agreement I.A.;

H.   by, or for the benefit of, or at the behest of the **Organization** or any **Subsidiary** or any entity which controls, is controlled by, or is under common control with the **Organization** or any **Subsidiary**, or any person or entity which succeeds to the interests of the **Organization** or any **Subsidiary**, provided, however, this exclusion shall not apply to any **Claim** brought by the receiver, conservator, liquidator, trustee, rehabilitator, examiner or similar official of the **Organization**, if any, in the event of **Financial Insolvency**;

I.   for any actual or alleged breach by the **Organization** or any **Subsidiary** of an express or implied contract, except for employment related obligations which would have attached absent such contract or agreement;

J.   other than **Costs of Defense**:

    (1)   for any obligation of the **Organization** or any **Subsidiary**, as a result of a **Claim**, seeking relief or redress in any form other than money damages, including but not limited to any obligations of the **Organization** or any **Subsidiary** to modify any building or property; or

    (2)    for any obligation of the **Organization** or any **Subsidiary** to pay compensation earned by any **Insured Person** in the course of employment, but not paid by the **Organization** or any **Subsidiary**, including any unpaid salary, bonus, wages, severance pay, retirement benefits, vacation days or sick days, provided, however, this exclusion shall not apply to front pay and back pay; or

    (3)    for any actual or alleged violation by any **Insured** of the Fair Labor Standards Act or any similar state or local law, provided, however, this shall not apply to the Equal Pay Act. **Costs of Defense** provided pursuant to this section, J.(3), shall be subject to the FLSA Defense Sublimit of Liability stated in Item 3(d) of the Declarations, if any;

**K.**    for any obligations under a worker's compensation, disability benefits, insurance benefits or unemployment compensation law, or any similar law; provided, however this exclusion shall not apply to a **Claim** for an **Employment Practices Wrongful Act** involving retaliation with regard to benefits paid or payable;

**L.**    for the performance of or failure to perform psychological, counseling, financial counseling/advisory, legal (except **Employed Lawyer Legal Services)**, arbitration, insurance or investment advisory services or referrals, if brought by or on behalf of any individual and/or entity for whom such services were, now are, or shall be performed;

**M.**    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving infringement of any patent or misappropriation of trade secrets, provided, however, this exclusion shall not apply to copyright or trademark infringement;

With respect to this section of the Policy, no fact pertaining to or conduct by any **Insured Person** shall be imputed to any other **Insured Person**; and only facts pertaining to or conduct by any past, present, or future Executive Director, President, or Chairman of the **Organization** shall be imputed to the **Organization** or any **Subsidiary** to determine if coverage is available.

## Section V. Limits of Liability and Retention

**A.**    The **Insurer** shall be liable to pay one hundred percent (100%) of **Loss** in excess of the Retention stated in Item 4 of the Declarations. The **Insurer's** maximum Limit of Liability for the aggregate amount of **Loss** resulting from all **Claims** deemed to have been made in a **Policy Year** shall be shown in Item 3 of the Declarations.

**B.**    One Retention shall apply to each and every **Claim**. More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim**, and only one Retention shall be applicable to such single **Claim**. All such **Claims**, constituting a single **Claim**, shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

**C.**    **Costs of Defense** incurred by the **Insurer** shall be in addition to the Limit of Liability, and such **Costs of Defense** shall not be subject to the Retention amount. If **Costs of Defense** are incurred by the **Insured** with the **Insurer's** consent, such **Costs of Defense** shall be considered **Loss** and thus subject to the Limit of Liability and Retention.

**D.**    With respect to all **Claims** deemed to have been made in a **Policy Year**, should the Limit of Liability be exhausted by payment of **Loss** resulting from one or more of such **Claims**, the **Insurer's** duty to defend shall cease and any and all obligations of the **Insurer** hereunder shall be deemed to be completely fulfilled and extinguished and the **Insurer** shall have no further obligations.

E.   For the purposes of the application of the Retention, **Loss** applicable to Insuring Agreement I.B. includes that for which indemnification is legally permissible, regardless of whether actual indemnification is granted. The certificate of incorporation, charter or other organizational document of the **Organization**, including by-laws and resolutions, shall be deemed to require indemnification and advancement of **Loss** to the **Insured Persons** to the fullest extent permitted by law.

## Section VI. Costs of Defense and Settlements

A.   The **Insureds** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express written consent of the **Insurer**, which consent shall not be unreasonably withheld. The **Insureds** shall provide the **Insurer** with full cooperation and all information and particulars it may reasonably request in order to reach a decision as to such consent. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the **Insurer's** consent shall not be covered hereunder.

B.   The **Insurer** has the right to investigate and settle any **Claim** as it deems expedient. If the **Insurer** recommends a settlement and the **Insured** refuses to consent thereto, the **Insurer's** liability for such **Claim** is limited to the amount in excess of the Retention, which the **Insurer** would have contributed had the **Insured** consented to the settlement, the **Costs of Defense** covered by the Policy and incurred prior to the date of such refusal to settle, and seventy percent (70%) of any additional covered **Loss**, including **Costs of Defense**, incurred subsequent to such refusal and subject to the Limit of Liability.

   If the **Insured** refuses to consent to a settlement as contemplated above, **Costs of Defense** shall be subject to the Retention.

## Section VII. Notice of Claim

A.   The **Insureds** shall, as a condition precedent of their rights under this Policy, give the **Insurer** notice in writing of any **Claim** made during the **Policy Period**. Such notice shall be given as soon as practicable after the date the President, Executive Director, Chief Financial Officer, General Counsel, or person with equivalent responsibility has knowledge of the **Claim**, and in no event later than ninety (90) days after the end of the **Policy Year**.

B.   If during the **Policy Period** or **Discovery Period**, any **Insured** first becomes aware of a specific **Wrongful Act** and gives notice to the **Insurer** of: (1) the specific **Wrongful Act**; (2) the injury or damage which has or may result therefrom; and (3) the circumstances by which the **Insured** first became aware thereof; then any **Claim** arising out of such **Wrongful Act** which is subsequently made against the **Insured** shall be deemed to have been made at the time the **Insurer** received such written notice from the **Insured.**

C.   In addition to furnishing the notice as provided in Section VII A or B, the **Insured** shall, as soon as practicable, provide the **Insurer** with copies of reports, investigations, pleadings and other documents in connection therewith, and shall provide all information, assistance and cooperation which the **Insurer** reasonably requests and do nothing to prejudice the **Insurer's** position or its potential or actual rights of recovery.

D.   Notice to the **Insurer** as provided in Section VII A or B shall be emailed to **ELDClaims@gaig.com** or mailed to **GREAT AMERICAN INSURANCE GROUP, EXECUTIVE LIABILITY DIVISION, CLAIMS DEPARTMENT, P.O. BOX 66943, CHICAGO, IL 60666.**

**Section VIII. Coverage Extensions**

**A.**   **Spousal/Domestic Partner Provision**

The coverage provided by this Policy shall also apply to the lawful spouse or "Domestic Partner" of any **Insured Person**, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of any **Insured Person**.   The term "Domestic Partner" shall mean any natural person qualifying as a domestic partner under the provisions of any applicable federal, state or local law.

**B.**   **Worldwide Provision**

The coverage provided under this Policy shall apply worldwide.   The term **Insured Persons** is deemed to include individuals who serve in equivalent positions in foreign **Subsidiaries**.

**C.**   **Estates and Legal Representatives**

The coverage provided by this Policy shall also apply to the estates, heirs, legal representatives, or assigns of any **Insured Persons** in the event of their death, incapacity or bankruptcy, but only for **Claims** arising out of any actual or alleged **Wrongful Acts** of any **Insured Persons**.

**D.**   **Donor Data Loss Crisis Fund**

The **Insurer** shall, subject to prior written consent, reimburse the **Organization** reasonable expenses incurred to hire an image consulting company for the purpose of reducing damage to reputation suffered by the **Organization** or any **Subsidiary** arising from donor information that is lost or stolen during the **Policy Period** and reported to the **Insurer** pursuant to the terms of this Policy, not to exceed the Donor Data Loss Crisis Fund Sublimit of Liability stated in Item 3(b) of the Declarations, if any.   No Retention shall apply to this coverage extension.

**Section IX. General Conditions**

**A.**   **Cancellation or Non-Renewal**

(1)   This Policy may be cancelled by the **Organization** at any time by written notice to the **Insurer**.   In the event the **Organization** cancels this Policy for reasons other than the downgrade of the **Insurer's** rating by A.M. Best, the **Insurer** shall retain the customary short rate portion of the premium.   However, if the **Organization** cancels the Policy due to a downgrade of the **Insurer's** rating to below [A-] by A.M. Best, the **Insurer** shall refund any unearned premium on a pro rata basis.   Payment of any unearned premium by the **Insurer** shall not be a condition precedent of the effectiveness of cancellation but such payment shall be made as soon as practicable.

(2)   This Policy will only be cancelled by the **Insurer** if the **Organization** does not pay the premium when due.

(3)   If the **Insurer** elects not to renew this Policy, the **Insurer** shall provide the **Organization** with at least sixty (60) days advance notice thereof.

B.   Proposal Form

It is agreed the particulars and statements contained in Proposal Forms submitted to the **Insurer** (and any material submitted therewith) are the representations of the **Insured** and are to be considered as incorporated in and constituting part of this Policy.  It is also agreed this Policy is issued in reliance upon the truth of such representations.  However, coverage shall not be excluded as a result of any untrue statement in the Proposal Form, except:

(1)  as to any **Insured Person** making such untrue statement or having knowledge of its falsity; or

(2)  as to the **Organization** and any **Subsidiary,** if the person(s) who signed the Proposal Form(s) for this coverage or any **Insured Person** who is or was a past, present or future Chief Financial Officer, President, or Executive Director of the **Organization** made such untrue statement or had knowledge of its falsity.

In no event shall Insuring Agreement I.A. of this Policy be rescinded by the **Insurer.**

C.   Outside Entity Provision

In the event a **Claim** is made against any **Insured Persons** arising out of their service as a director, officer, trustee, regent, governor, or member of the Board of Managers of an **Outside Entity,** coverage as may be afforded under this Policy shall be excess of any indemnification provided by the **Outside Entity** and any insurance provided to the **Outside Entity** which covers its directors, trustees, officers, regents, governors, member of the Board of Managers, or natural person general partners.

In the event Great American Insurance Group provides Directors' and Officers' Liability Insurance for the **Outside Entity,** all **Loss** incurred from all **Claims** submitted under this Policy and the **Outside Entity's** Policy (hereinafter referred to as **Respective Policy(ies)),** arising out of **Related Wrongful Acts,** shall be considered a single **Loss** and the maximum annual aggregate Limit of Liability shall not exceed, under the **Respective Policies,** the higher Limit of Liability between the **Respective Policies,** such Limit of Liability being part of, and not in addition to, the Limits of Liability of the **Respective Policies** previously referenced.

D.   Order of Payments

In the event of **Loss** arising from a covered **Claim** for which payment is due under the provisions of this Policy, the **Insurer** shall first, pay **Loss** for which coverage is provided under Insuring Agreement I.A. of this Policy; and thereafter with respect to whatever remaining amount of the Limit of Liability is available after such payment, pay such other **Loss** for which coverage is provided under any other applicable Insuring Agreements in Section I of this Policy.

E.   Merger or Acquisition

If, during the **Policy Period,** the **Organization** acquires the assets of another entity, by merger or otherwise, and the acquired assets of such other entity exceed thirty-five percent (35%) of the assets of the **Organization** as of the inception date of the Policy, written notice thereof shall be given to the **Insurer** as soon as practicable, but in no event later than ninety (90) days from the effective date of the transaction, together with such information as the **Insurer** may request.  Premium adjustment and coverage revisions shall be effected as may be required by the **Insurer.**

F. **Conversion to Run-Off Coverage**

If prior to the end of the **Policy Period**, the **Organization** merges into another organization and the **Organization** is not the surviving entity, another organization or person acquires the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of the **Organization**, or the **Organization** ceases to qualify as a not-for-profit organization under any federal, provincial and territorial legislation and/or the Internal Revenue Code (such events hereinafter referred to as **Transaction**), then:

(1) the **Organization** must give written notice of such **Transaction** to the **Insurer** within thirty (30) days after the effective date of such **Transaction**, and provide the **Insurer** with such information as the **Insurer** may deem necessary; and

(2) this Policy, including the **Discovery Period** if elected, shall apply, but only with respect to any **Wrongful Act** committed prior to the effective date of such **Transaction**.

G. **Action Against the Insurer**

(1) No action shall be taken against the **Insurer** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the **Insured's** obligation to pay shall have been finally determined by an adjudication against the **Insured** or by written agreement of the **Insured**, those filing the claim, and the **Insurer**.

(2) No person or organization shall have any right under this Policy to join the **Insurer** as a party to any **Claim** against any **Insured** nor shall the **Insurer** be impleaded by any **Insured** or their legal representative in any such **Claim**.

H. **Subrogation**

In the event of payment under this Policy, the **Insurer** shall be subrogated to all the **Insureds'** rights of recovery. The **Insureds** shall do everything necessary to secure such rights, including the execution of such documents necessary to enable the **Insurer** to effectively bring suit in the name of any **Insured**. In no event, however, shall the **Insurer** exercise its rights to subrogation against an **Insured Person** under this Policy unless, such **Insured Person**:

(1) has been convicted of a deliberate criminal act, or

(2) has been determined by a final adjudication adverse to the **Insured Person** to have committed a deliberate fraudulent act, or to have obtained any profit, advantage or remuneration to which such **Insured Person** was not legally entitled.

In the event the **Insurer** shall for any reason pay indemnifiable **Loss** on behalf of an **Insured Person**, the **Insurer** shall have the contractual right hereunder to recover from the **Organization** or any **Subsidiary** the amount of such **Loss** equal to the amount of the Retention not satisfied by the **Organization** or any **Subsidiary** and shall be subrogated to rights of the **Insured Persons** hereunder.

I. **Conformity to Law**

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

J. **Assignment**

Assignment of interest under this Policy shall not bind the **Insurer** until its consent is endorsed hereon.

**K.** **Representative of the Insurer**

Great American Insurance Group, Executive Liability Division, Post Office Box 66943, Chicago, Illinois, 60666 shall act on behalf of the **Insurer** for all purposes including, but not limited to, the giving and receiving of all notices and correspondence.

**L.** **Organization Represents Insured**

By acceptance of this Policy, the **Organization** shall be designated to act on behalf of the **Insureds** for all purposes including, but not limited to, giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

**M.** **Entire Agreement**

By acceptance of this Policy, the **Insured** and the **Insurer** agree that this Policy (including the Proposal Forms submitted to the **Insurer** and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties.

In witness whereof the **Insurer** has caused this Policy to be signed by its President and Secretary and countersigned, if required, on the Declarations page by a duly authorized agent of the **Insurer**.

**GREAT AMERICAN INSURANCE COMPANY®**

*President*               *Secretary*



**GREATAMERICAN**
INSURANCE GROUP

Executive Liability Division
1450 American Lane, 8th Floor
Schaumburg, IL 60173

Claims Department
800.869.9965  Direct
513.864.3750  Fax
GreatAmericanInsurance.com

P.O. Box 66943
Chicago, IL 60666-0943

January 25, 2018

<u>**VIA EMAIL: vickey.benwood@comcast.net**</u>
Benwood-McMechen Housing Authority
c/o Vickey Battista, Executive Director
2200 Marshall St.
Benwood, WV 26031

RE:  Insurer:  Great American Insurance Company
     Insured:  Benwood-McMechen Housing Authority
     Policy No.:  EPP9426315
     Policy Period: 03/10/17 – 03/10/18
     Claim No.:  A00140475
     *Celise R. Roxby v. William Keith Redman, Jr., Cirstin Rae Redman, Robert Allen Skvarka,
     Benwood-McMechen Housing Authority, Bayer Heritage Federal Credit Union, Marshall
     County Commission, Hill Appraisals, LLC, Jody Hill, J&J, LLP, Thomas Young, Change,
     Inc. and Northern Panhandle HOME Consortium,* Case No.: 17-C-247©

Dear Ms. Battista:

On behalf of Great American Insurance Company ("Great American"), I acknowledge receipt of
correspondence dated January 24, 2018, from Luz Maysonet of Mercer Consumer, providing us with
notice of the above captioned matter. After careful review, Great American respectfully denies
coverage in this matter for the following reasons.

<u>**THE POLICY**</u>

For the **Policy Period**[1] March 10, 2017 to March 10, 2018, Great American provides insurance to
Benwood-McMechen Housing Authority ("BMHA") pursuant to the terms, conditions, provisions
of and endorsements to Nonprofit Solutions Policy Number EPP9426315 ("Policy"). The Policy
provides coverage for **Loss** resulting from **Claims**, first made during the **Policy Period**, for
**Wrongful Acts** by an **Insured**. The Policy sets forth a $500,000 aggregate Limit of Liability
subject to a Retention of $2,500 under Insuring Agreements I.B. and I.C. for all **Claims**. Further,
Great American has the right and duty to defend any **Claim** to which this insurance applies.

---

[1] All words in bold print represent terms defined in the Policy.



**PLAINTIFF'S EXHIBIT** B

Vickey Battista
January 25, 2018
Page 2 of 3

## FACT SUMMARY

Based on the materials submitted, we note that Celise Roxby, by and through her attorneys, sent a Notice of Violation letter dated December 8, 2017, to William Keith Redman, Jr., Cirstin Rae Redman, Robert Allen Skvarka, Bayer Heritage Federal Credit Union, Marshall County Commission, Hill Appraisals, LLC, J&J, LLP, Change, Inc., Northern Panhandle HOME Consortium, and BMHA (collectively referred to herein as "Respondents"). Ms. Roxby alleges there were misrepresentations and omissions made by the Respondents regarding her purchase of the property located at 445 Main Street, Benwood, WV 26031 ("subject property"). Ms. Roxby claims the home inspector hired by BMHA, failed to note significant structural, electrical, plumbing, and ventilation deficiencies in the home. Ms. Roxby further alleges that she has spent approximately $5,000 to repair her home and estimates an additional $30,000 is needed to meet minimum federal quality standards. As a result, Ms. Roxby seeks a Cure Offer from the Respondents to repair the damage to her home.

Additionally, on or about January 17, 2018, Ms. Roxby filed an Amended Complaint[2] in the Circuit Court of Marshall County, West Virginia against William Keith Redman, Jr., Cirstin Rae Redman, Robert Allen Skvarka, Bayer Heritage Federal Credit Union, Marshall County Commission, Hill Appraisals, LLC, Jody Hill, J&J, LLP, Thomas Young, Change, Inc. Northern Panhandle HOME Consortium, and BMHA (collectively referred to herein as "Defendants"). Ms. Roxby again alleges there were misrepresentation and omissions made by the Defendants, which resulted in property damage and seepage to the subject property. As a result, Ms. Roxby seeks damages, attorneys fees, and costs. We reference the allegations for purposes of our coverage analysis only, and do not intend to imply any merit to them.

## COVERAGE ANALYSIS

Initially, coverage is not available to William Keith Redman, Jr., Cirstin Rae Redman, Robert Allen Skvarka, Bayer Heritage Federal Credit Union, Marshall County Commission, Hill Appraisals, LLC, Jody Hill, J&J, LLP, Thomas Young, Change, Inc., or Northern Panhandle HOME Consortium, as they are not considered **Insureds** under the Policy.

Pursuant to Section V.B. of the Policy, we consider the Notice of Violation letter and Amended Complaint a single **Claim** first made on December 8, 2017 (the approximate date of receipt of the Notice of Violation letter), as they involve the same **Wrongful Acts** or **Related Wrongful Acts**.

While this matter constitutes a **Claim** against BMHA, coverage is not available for the following reason.

Specifically, we direct your attention to Sections IV.D. and IV.G of the Policy, which state in pertinent part:

This Policy does not apply to any **Claim** made against any **Insured**:

---

[2] We reference the Amended Complaint as it is the operative pleading at this time.

Vickey Battista
January 25, 2018
Page 3 of 3

    D.    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving: (1) bodily injury, sickness, disease or death of any person, assault or battery; (2) *damage to or destruction of any tangible property or the loss of use of any tangible property*; or (3) humiliation, mental anguish, or emotional distress; [...]]

    G.    based upon, arising out of, relating to, directly or indirectly resulting from or inconsequence of, or in any way involving actual or alleged *seepage*, pollution, radiation, emission, contamination or irritant of any kind, including but not limited to smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, asbestos, chemicals or waste of any kind, [...] (*emphasis* added)

Ms. Roxby's allegations are based upon, arise out and at the very least involve property damage and/or seepage. Accordingly, the foregoing sections of the Policy exclude coverage for this matter. Therefore, Great American will not provide a defense or indemnity to BMHA in this matter.

Our declination of coverage in this matter is based upon the information provided to date. As such, Great American is not waiving its rights under the Policy to raise additional issues of coverage under the Policy. If any **Insured** believes we improperly denied coverage, we ask the **Insured** to contact Great American immediately with any additional information it would like Great American to consider.

Please do not hesitate to contact me with any questions or concerns.

Very truly yours,
***GREAT AMERICAN INSURANCE COMPANY***

Daniel P. Evans
Senior Claims Attorney
Executive Liability Division
dpevans@gaig.com
(312)385-4257

DPE/sah

cc:    Luz Maysonet / Mercer Consumer / luz.maysonet@mercer.com



**GREATAMERICAN**
INSURANCE GROUP

Executive Liability Division
1450 American Lane, 8th Floor
Schaumburg, IL 60173

P.O. Box 66943
Chicago, IL 60666-0943

Claims Department
800.869.9965 Direct
513.864.3750 Fax
GreatAmericanInsurance.com

July 12, 2018

Jonathan Turak
Gold, Khourey & Turak, L.C.
510 Tomlinson Avenue
Moundsville, WV 26041

RE:   Insurer:       Great American Insurance Company
      Insured:       Benwood-McMechen Housing Authority
      Policy No.:    EPP9426315
      Policy Period: 03/10/17 – 03/10/18
      Claim No.:     A00140475
      *Celise R. Roxby v. William Keith Redman, Jr., Cirstin Rae Redman, Robert Allen Skvarka,*
      *Benwood-McMechen Housing Authority, Bayer Heritage Federal Credit Union, Marshall*
      *County Commission, Hill Appraisals, LLC, Jody Hill, J&J, LLP, Thomas Young, Change,*
      *Inc. and Northern Panhandle HOME Consortium,* Case No.: 17-C-247©

Dear Mr. Turak:

On behalf of Great American Insurance Company, I formally acknowledge receipt of your prior
correspondence, providing us with additional documentation. Please allow this to serve as our
supplemental coverage analysis.

## THE POLICY

As you know, for the **Policy Period**[1] March 10, 2017 to March 10, 2018, Great American
provides insurance to Benwood-McMechen Housing Authority ("BMHA") pursuant to the
terms, conditions, provisions of and endorsements to Nonprofit Solutions Policy Number
EPP9426315 ("Policy"). The Policy provides coverage for **Loss** resulting from **Claims**, first
made during the **Policy Period**, for **Wrongful Acts** by an **Insured**. The Policy sets forth a
$500,000 aggregate Limit of Liability subject to a Retention of $2,500 under Insuring
Agreements I.B. and I.C. for all **Claims**. Further, Great American has the right and duty to
defend any **Claim** to which this insurance applies.

---

[1] All words in bold print represent terms defined in the Policy.



PLAINTIFF'S
EXHIBIT
*C*

Mr. Turak
July 12, 2018
Page 2 of 4

## FACT SUMMARY

Based on the prior submitted materials, we note that Celise Roxby, by and through her attorneys, sent a Notice of Violation letter dated December 8, 2017, to William Keith Redman, Jr., Cirstin Rae Redman, Robert Allen Skvarka, Bayer Heritage Federal Credit Union, Marshall County Commission, Hill Appraisals, LLC, J&J, LLP, Change, Inc., Northern Panhandle HOME Consortium, and BMHA (collectively referred to herein as "Respondents"). Ms. Roxby alleges there were misrepresentations and omissions made by the Respondents regarding her purchase of the property located at 445 Main Street, Benwood, WV 26031 ("subject property). Ms. Roxby claims the home inspector hired by BMHA, failed to note significant structural, electrical, plumbing, and ventilation deficiencies in the home, as well as, water intrusion into the interior of the home, electrical system, and basement. Ms. Roxby further alleges that she has spent approximately $5,000 to repair her home and estimates an additional $30,000 is needed to meet minimum federal quality standards. As a result, Ms. Roxby seeks a Cure Offer from the Respondents to repair the damage to her home.

Additionally, on or about January 17, 2018, Ms. Roxby filed an Amended Complaint[2] in the Circuit Court of Marshall County, West Virginia against William Keith Redman, Jr., Cirstin Rae Redman, Robert Allen Skvarka, Bayer Heritage Federal Credit Union, Marshall County Commission, Hill Appraisals, LLC, Jody Hill, J&J, LLP, Thomas Young, Change, Inc. Northern Panhandle HOME Consortium, and BMHA (collectively referred to herein as "Defendants"). Ms. Roxby again alleges there were misrepresentation and omissions made by the Defendants, which resulted in property damage and seepage to the subject property. As a result, Ms. Roxby seeks damages, attorneys fees, and costs. We reference the allegations for purposes of our coverage analysis only, and do not intend to imply any merit to them.

## COVERAGE ANALYSIS

This matter constitutes a **Claim** for which coverage is available to BMHA and Mr. Skvarka, subject to the terms, conditions, exclusions and endorsements of the Policy.

Initially, we direct your attention to Sections IV.A., IV.D., and IV.G., which states in pertinent part:

This Policy does not apply to any **Claim** made against any **Insured**:

A.      brought about or contributed to by: (1) any **Insured** gaining any profit, advantage or remuneration to which they were not legally entitled; or (2) the deliberate fraudulent or criminal acts of any **Insured**; however, this exclusion shall not apply unless it is finally adjudicated such conduct in fact occurred, nor shall it apply to coverage provided under Insuring Agreement I.B.;

---

[2] We reference the Amended Complaint as it is the operative pleading at this time. Also, the Amended Complaint you submitted on March 27, 2018, is identical to the Amended Complaint that was previously submitted.

Mr. Turak
July 12, 2018
Page 3 of 4

    D.    based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving: (1) bodily injury, sickness, disease or death of any person, assault or battery; (2) damage to or destruction of any tangible property or the loss of use of any tangible property; or (3) humiliation, mental anguish, or emotional distress; [...]

    G.    based upon, arising out of, relating to, directly or indirectly resulting from or inconsequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission, contamination or irritant of any kind, including but not limited to smoke, vapor, dust, fibers, mold, spores, fungi, germs, soot, fumes, acids, alkalis, asbestos, chemicals or waste of any kind, [...]

The above allegations could be construed to include at the very least, allegations of, fraud, property damage, and seepage. Therefore, coverage for this matter may be limited or excluded by the foregoing sections of the Policy.

Great American has consented to the appointment of Thomas Steele of Steele Law Office, as defense counsel for BMHA and Mr. Skvarka. The firm's address is 360 Lee Avenue, Clarksburg, WV 26301. Please feel free to contact Mr. Steele at (304)624-4004, or me with any questions concerning the defense of this matter.

We direct your attention to Section VI.A. of the Policy, which states:

> The **Insureds** shall not incur **Costs of Defense**, or admit liability, offer to settle, or agree to any settlement in connection with any **Claim** without the express written consent of the **Insurer**, which consent shall not be unreasonably withheld. The **Insureds** shall provide the **Insurer** with full cooperation and all information and particulars it may reasonably request in order to allow the **Insurer** to reach a decision as to such consent. Any **Loss** resulting from any admission of liability, agreement to settle, or **Costs of Defense** incurred prior to the **Insurer's** consent shall not be covered hereunder.

We further call your attention to Section VI.B. of the Policy, which states:

> The **Insurer** has the right to investigate and settle any **Claim** as it deems expedient. If the **Insurer** recommends a settlement and the **Insured** refuses to consent thereto, the **Insurer's** liability for such **Claim** is limited to the amount in excess of the Retention, which the **Insurer** would have contributed had the **Insured** consented to the settlement, the **Costs of Defense** covered by the Policy and incurred prior to the date of such refusal to settle, and seventy percent (70%) of any additional covered **Loss**, including **Costs of Defense**, incurred subsequent to such refusal and subject to the Limit of Liability.

Mr. Turak
July 12, 2018
Page 4 of 4

> If the **Insured** refuses to consent to a settlement as contemplated above, **Costs of Defense** shall be subject to the Retention.

In the event Great American recommends a settlement in this matter, we will further explain the provisions of the foregoing section of the Policy at that time.

Finally, pursuant to Section IV.B. of the Policy, please forward a copy of any correspondence received from any other carrier in response to notice of this matter.

At this time, Great American is handling this matter under a full reservation of rights, including the right to raise additional Policy terms, conditions and exclusions upon receipt of additional information and as this matter progresses.

Please do not hesitate to contact me should you have any questions or concerns regarding this matter.

Very truly yours,
*GREAT AMERICAN INSURANCE COMPANY*

Daniel P. Evans
Senior Claims Attorney
Executive Liability Division
dpevans@gaig.com
(312)385-4257

IN THE CIRCUIT COURT OF MARSHALL COUNTY, WEST VIRGINIA

Celise R. Roxby,

          Plaintiff,

               vs.

: Civil Action No. 17-C-247(C)

William Keith Redman, Jr.,  Cirstin Rae Redman,
Robert Allen Skvarka, Benwood-McMechen Housing
Authority,  Bayer Heritage Federal Credit Union,
Marshall County Commission,  Hill Appraisals, LLC,
Jody Hill, J & J, LLP, Thomas Young,  Change, Inc. and
Northern Panhandle HOME Consortium ,

          Defendants.

## AMENDED COMPLAINT

1.    Celise R. Roxby alleges that misrepresentations and omissions were made either

negligently, recklessly or intentionally, upon which she reasonably relied, to her detriment

regarding her contract to purchase of 445 Main Street, Benwood, WV 26031 by Defendants,

William Keith Redman, Jr. and/or  Cirstin Rae Redman, regarding the condition of the premises,

including but not limited to the foundation permitting significant intrusion of water into the

basement, the deteriorated condition of the gutters and down spouts which permit air and water

intrusion into the interior, water intrusion into the interior electrical system, that many electrical

outlets were missing cover plates which were obscured from vision, that  many electrical outlets

were inoperable, that water runoff from the gas heat would drain onto the basement floor, that the

dryer vent ran into the basement instead of outside, that the stove needed replaced, that the

flooring under the stove needed replaced, no smoke detectors in 2 upstairs rooms, a broken

smoke detector in the dining room, missing heat vent in kitchen, hole in 2nd floor bathroom floor

covered with loose boards at time of tour of home, leaking hose lines under bathroom sinks, that

the bathroom light cover would be removed by the time of the closing, that 3 additional interior

PLAINTIFF'S
EXHIBIT
7

and one exterior light covers would be removed by the time of the closing, that a door to an upstairs room would be removed by the time of the closing,

2.   Celise R. Roxby alleges that misrepresentations and omissions were made, either negligently, recklessly or intentionally, upon which she reasonably relied, to her detriment regarding services concerning her real estate loans for her purchase of 445 Main Street, Benwood, WV 26031 in violation of the special duty owed to her and special relationship between her and the governmental and quasi-governmental Defendants herein, or their agents.

3.   Celise R. Roxby alleges that misrepresentations and omissions were made, either negligently, recklessly or intentionally, upon which she reasonably relied, to her detriment regarding services concerning her real estate loans for her purchase of 445 Main Street, Benwood, WV 26031 in violation of the general duties owed to her by Defendants regarding the conveyance of the property, the property appraisal, the property inspection and processing of the loans and also in violation of West Virginia Code, §46A-6-102(7) "Unfair methods of competition and unfair or deceptive acts or practices" including but not limited to, any one or more of the following:

(D) Using deceptive representations or designations of geographic origin in connection with goods or services;

(E) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation or connection that he does not have;...

(G) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are of another;...

(I) Advertising goods or services with intent not to sell them as advertised;...

(L) Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding;

(M) The act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material

fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby;

(N) Advertising, printing, displaying, publishing, distributing or broadcasting, or causing to be advertised, printed, displayed, published, distributed or broadcast in any manner, any statement or representation with regard to the sale of goods or the extension of consumer credit including the rates, terms or conditions for the sale of such goods or the extension of such credit, which is false, misleading or deceptive or which omits to state material information which is necessary to make the statements therein not false, misleading or deceptive... (Underline emphasis added).

William Keith Redman, Jr. and Cirstin Rae Redman who declined to claim a certified mail Notice of Violation letter dated December 8, 2017, sent to each of them may make a Cure Offer pursuant to West Virginia Code, §46A-6-106(c) within ten (10) days from their receipt of this Amended Complaint.

4. On January 22, 2016, Celise R. Roxby purchased 445 Main Street, Benwood, West Virginia for $55,000.00 from William Keith Redman, Jr. and Cirstin Rae Redman.

5. Celise R. Roxby obtained a loan for the purchase of 445 Main Street, Benwood, West Virginia for $7,533.16 negligently financed by the Marshall County Commission with assistance from Robert Allen Skvarka, Benwood-McMechen Housing Authority, Northern Panhandle HOME Consortium and Change, Incorporated via the Marshall County HOME Program and a conventional loan for $49,500.00 negligently financed by Bayer Heritage Federal Credit Union.

6. Robert Allen Skvarka inspected the home as required by federal guidelines and regulations associated with the HOME Program, i.e. 24 CAR 92.254(c)(2), on December 17, 2015, and either negligently, recklessly or intentionally failed to note deficiencies in electrical, plumbing, ventilation/heat, floor condition, smoke detectors, security, basement handrail, basement foundation, structural integrity, basement water intrusion, defective down spouts, termite damage affecting structural integrity, termite infestation and sewer gas odor. Despite the

deficiencies Robert Allen Skvarka either negligently, recklessly or intentionally passed the home as meeting federal quality standards as set forth in 24 CAR 92.251(c)(3) requiring the home to be "decent, safe, sanitary and in good repair" and that it "meets all applicable state and local housing quality standards and code requirements."

7.      Benwood-McMechen Housing Authority, Northern Panhandle HOME Consortium, Marshall County Commission and Change, Incorporated negligently selected Robert Allen Skvarka as their agent to do the federally mandated inspection.

8.      J & J, LLP, doing business as Harvey Goodman Realtor, by its agent, Thomas Young, either negligently, recklessly or intentionally advised Celise R. Roxby that an independent home inspection was not needed due to the federally mandated inspection and appraisal.

9.      Hill Appraisals, LLC, by its agent, Jody J. Hill, in the December 9, 2015, appraisal for the Bayer Heritage Federal Credit Union loan to Celise R. Roxby either negligently, recklessly or intentionally stated that there were no "physical deficiencies or adverse conditions that may affect the livability, soundness, or structural integrity of the property", but also stated "appraiser notes at the time of his inspection of the subject the obvious infestation of pests, dampness or settlement."

10.      Bayer Heritage Federal Credit Union either negligently, recklessly or intentionally advised Celise R. Roxby that an independent home inspection was not needed due to the federally mandated inspection and appraisal and either negligently, recklessly or intentionally closed the loan to Celise R. Roxby when it had information from the appraisal that there was obvious infestation of the home.

11.      Defendants combined their property, money, effects, skill, and knowledge via express or implied contracts creating a joint venture for profit relating to the purchase of 445

Main Street, Benwood, West Virginia by Celise R. Roxby.

12.   Due to the Defendants either negligent, reckless or intentional actions in violation of duties owed to Celise R. Roxby, breach of contracts, statutory unfair or deceptive acts or practices, fraudulent inducement, common law fraud, and breach of implied warranty of habitability or fitness, she has incurred expenses of approximately five (5) thousand dollars for repairs to the home and estimates an additional $30,000.00 is needed to meet minimum federal quality standards.

WHEREFORE, Plaintiff prays for an award of compensatory damages, punitive damages, attorney fees, litigation expenses, interest and court costs against the Defendants, jointly and severally.

Plaintiff demands a trial by jury.

_____
Counsel for Plaintiff

Ronald Wm. Kasserman, Esquire (WVSB #1958)
Kasserman Law Offices, PLLC
94 - 14th Street
Wheeling, WV 26003
Telephone: (304) 218-2100
Fax: (304) 218-2102